**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| MYPAQ HOLDINGS LTD., | CIVIL ACTION NO. 6:21-CV-00933-ADA |
| Plaintiff, | |
| v. | |
| DELL TECHNOLOGIES INC. and DELL INC., | JURY TRIAL DEMANDED |
| Defendants. | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR
PATENT INFRINGEMENT AND JURY DEMAND**

Plaintiff MyPAQ Holdings Ltd. ("MyPAQ") files this First Amended Complaint for Patent Infringement and Jury Demand against Defendants Dell Technologies Inc. and Dell Inc. (together, "Defendants" or "Dell"). Plaintiff alleges infringement of United States Patent Number 7,675,759 (the "'759 Patent") and United States Patent Number 8,477,514 (the "'514 Patent") (together, the "Patents") as follows:

**I. PARTIES**

1.      MyPAQ is a corporation organized and existing under the laws of the Republic of Seychelles with a principal place of business at 303 Aarti Chambers, Victoria Mahe, Republic of Seychelles. MyPAQ is the assignee of each of the Patents.

2.      Defendant Dell Technologies Inc. is a corporation organized and existing under the laws of Delaware with a principal place of business at One Dell Way, Round Rock, Texas 78682. Dell Technologies Inc. may be served with process through its registered agent with the Delaware Secretary of State, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

3.      Defendant Dell Inc. is an indirect subsidiary corporation of Dell Technologies Inc., organized and existing under the laws of Delaware with a principal place of business at One Dell Way,

Round Rock, Texas 78682. Dell Inc. has additional offices at 1404 Park Center Drive, Austin, Texas; 701 E. Parmer Lane, Building PS2, Austin, Texas; 12500 Tech Ridge Road, Austin, Texas; 9715 Burnet Road, Austin, Texas; and 4309 Emma Browning Avenue, Austin, Texas. Dell Inc. may be served with process through its registered agent with the Texas Secretary of State, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701. Dell Inc. is registered to do business in Texas and has been since at least October 27, 1987.

## II. JURISDICTION

4.      This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 284, and 285. This is a patent infringement lawsuit over which this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

5.      This United States District Court for the Western District of Texas has general and specific personal jurisdiction over Defendants because Defendants are present in, and transact and conduct business in and with residents of, this District and the State of Texas.

6.      MyPAQ's causes of action arise, at least in part, from Defendants' contacts with and activities in this District and the State of Texas.

7.      Defendants have committed acts that infringe the Patents within this District and the State of Texas by making, using, selling, offering for sale, and/or importing infringing products in or into this District and elsewhere in the State of Texas. Defendants make, use, sell, offer for sale, ship, distribute, advertise, promote, and/or otherwise commercialize such infringing products in this District and the State of Texas. Defendants regularly conduct and solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from goods and services provided to residents of this District and the State of Texas.

## III. VENUE

8.       Venue is proper in this District against Defendants because each has physical offices located in this District that are regular and established places of business and belong to them. *See In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017).

9.       As a result of Dell's corporate structure, Dell Technologies Inc. exercises direction and control over the performance of Dell Inc. Alternatively, Defendants form a joint business enterprise such that the performance by one is attributable to the other.

10.       As such, Defendants, individually and collectively as a common business enterprise, conduct business operations and maintain regular and established offices in the Western District of Texas, including at One Dell Way, Round Rock, Texas 78682, which is Dell's principal place of business. Dell. Inc. has additional offices in this District at 1404 Park Center Drive, Austin, Texas; 701 E. Parmer Lane, Building PS2, Austin, Texas; 12500 Tech Ridge Road, Austin, Texas; 9715 Burnet Road, Austin, Texas; and 4309 Emma Browning Avenue, Austin, Texas.

11.       In addition, each of the Defendants has placed, or contributed to placing, infringing products into the stream of commerce via an established distribution channel knowing or understanding that such products would be sold and used in the United States, including in the Western District of Texas.

12.       On information and belief, Defendants have authorized retailers that offer and sell products on their behalf in this District, including the products accused of infringement herein. On information and belief, these retailers include Office Depot, *e.g.*, at 5524 Bosque Boulevard, Waco, Texas 76710, and Best Buy, *e.g.*, at 4627 S. Jack Kultgen Expressway, Waco, Texas 76706, among others.

13.       On information and belief, Defendants have each derived substantial revenue from infringing acts in the Western District of Texas, including from the sale and use of infringing products.

14.     Venue is proper under 28 U.S.C. § 1391(b)–(c) and 28 U.S.C. § 1400.

## IV. UNITED STATES PATENT NUMBER 7,675,759

15.     United States Patent Number 7,675,759 is titled "Power System with Power Converters Having an Adaptive Controller" and was filed on February 23, 2007. The '759 Patent claims priority to United States Patent Application Number 11/607,325, which was filed on December 1, 2006. A true and correct copy of the '759 Patent is attached as Exhibit A and is publicly available at https://pdfpiw.uspto.gov/.piw?PageNum=0&docid=7675759.

16.     The '759 Patent claims patent-eligible subject matter and is valid and enforceable.

17.     Claim 1 of the '759 Patent reads:

> A power converter coupled to a power system controller configured to receive a signal indicating a system operational state of a load coupled thereto, comprising:
>
> > a power switch configured to conduct for a duty cycle to provide a regulated output characteristic at an output thereof; and
> >
> > a controller configured to receive a command from said power system controller to enter a power converter operational state as a function of said signal indicating said system operational state, said controller further configured to provide a signal to control said duty cycle of said power switch as a function of said output characteristic and in accordance with said command, thereby regulating an internal operating characteristic of said power converter to improve an operating efficiency thereof as a function of said system operational state.

18.     Claim 2 of the '759 Patent reads:

> The power converter as recited in claim 1 wherein said power converter is configured to enter said power converter operational state within a transition time from another power converter operational state.

19.     Claim 6 of the '759 Patent reads:

> A power system coupled to a load, comprising:

a power system controller configured to receive a signal indicating a system operational state of said load and to select a power converter operational state as a function thereof; and

a power converter, including:

>  a power switch configured to conduct for a duty cycle to provide a regulated output characteristic at an output thereof, and

>  a controller configured to receive a command from said power system controller to enter said power converter operational state and to provide a signal to control said duty cycle of said power switch as a function of said output characteristic and in accordance with said command, thereby regulating an internal operating characteristic of said power converter to improve an operating efficiency thereof as a function of said system operational state.

20.    Claim 11 of the '759 Patent reads:

The power system as recited in claim 6 wherein said power converter is configured to enter said power converter operational state within a transition time from another power converter operational state.

21.    Claim 16 of the '759 Patent reads:

A method of operating a power system coupled to a load, comprising:

>  receiving a signal indicating a system operational state of said load;

>  generating a power converter operational state as a function of said system operational state;

>  inducing a power converter to enter said power converter operational state; and

>  providing a signal to control a duty cycle of a power switch of said power converter as a function of an output characteristic thereof and in accordance with said power converter operational state, thereby regulating an internal operating characteristic of said power converter to improve an operating efficiency thereof as a function of said system operational state.

22.    The '759 Patent's named inventors are Daniel A. Artusi, Ross Fosler, and Allen F. Rozman.

23. MyPAQ owns all rights, title, and interests in and to the invention of the '759 Patent and its underlying patent applications by written assignments recorded in the United States Patent and Trademark Office. On March 8, 2007, as recorded with the United States Patent and Trademark Office on April 18, 2007, Daniel A. Artusi, Ross Fosler, and Allen F. Rozman assigned their interests in the '759 Patent to ColdWatt, Inc. On April 7, 2008, as recorded with the United States Patent and Trademark Office on February 4, 2009, ColdWatt, Inc. merged with Flextronics International USA, Inc. In turn, Flextronics International USA, Inc. assigned its interests in the '759 Patent to MyPAQ on March 26, 2021, as recorded with the United States Patent and Trademark Office on April 8, 2021.

24. As a result, MyPAQ is the exclusive owner by assignment of all rights, title, and interests in the '759 Patent, including the right to bring this suit for damages, and including the right to sue and recover all past, present, and future damages for infringement of the '759 Patent.

25. Defendants are not licensed to the '759 Patent, either expressly or implicitly, nor do they enjoy or benefit from any rights in or to the '759 Patent whatsoever.

## V. UNITED STATES PATENT NUMBER 8,477,514

26. United States Patent Number 8,477,514 is titled "Power System with Power Converters Having an Adaptive Controller" and was filed on February 22, 2010. The '514 Patent claims priority to United States Patent Application Number 11/607,325, which was filed on December 1, 2006. A true and correct copy of the '514 Patent is attached as Exhibit B and is publicly available at https://pdfpiw.uspto.gov/.piw?PageNum=0&docid=8477514.

27. The '514 Patent claims patent-eligible subject matter and is valid and enforceable.

28. Claim 1 of the '514 Patent reads:

A power converter coupled to a load, comprising:

a power switch configured to conduct for a duty cycle to provide an output characteristic at an output thereof; and

a power converter controller configured to receive a signal from said load indicating a system operational state of said load and control an internal operating characteristic of said power converter as a function of said signal.

29.     Claim 2 of the '514 Patent reads:

The power converter as recited in claim 1 wherein said power converter controller is further configured to provide another signal to control said duty cycle of said power switch as a function of said output characteristic and in accordance with said signal.

30.     Claim 3 of the '514 Patent reads:

The power converter as recited in claim 1 wherein said power converter controller is configured to adjust said internal operating characteristic over a period of time.

31.     Claim 5 of the '514 Patent reads:

The power converter as recited in claim 1 wherein said internal operating characteristic is selected from the group consisting of:

a gate drive voltage level of said power switch of said power converter,

a switching frequency of said power converter, and

an internal direct current bus voltage of said power converter.

32.     Claim 6 of the '514 Patent reads:

A power system, comprising:

a power system controller configured to provide a signal characterizing a power requirement of a processor system; and

a power converter coupled to said processor system, comprising:

a power switch configured to conduct for a duty cycle to provide an output characteristic at an output thereof, and

a power converter controller configured to receive a signal from said power system controller to control an internal

operating characteristic of said power converter as a function of said signal.

33.    Claim 7 of the '514 Patent reads:

The power system as recited in claim 6 wherein said power converter controller is further configured to provide another signal to control said duty cycle of said power switch as a function of said output characteristic and in accordance with said signal.

34.    Claim 8 of the '514 Patent reads:

The power system as recited in claim 6 wherein said power converter controller is configured to adjust said internal operating characteristic over a period of time.

35.    Claim 10 of the '514 Patent reads:

The power system as recited in claim 6 wherein said internal operating characteristic is selected from the group consisting of:

a gate drive voltage level of said power switch of said power converter,

a switching frequency of said power converter, and

an internal direct current bus voltage of said power converter.

36.    Claim 11 of the '514 Patent reads:

A power system, comprising:

a power system controller configured to enable operation of components of a processor system to establish a state of power drain thereof, said power system controller configured to provide a signal to identify operation of said processor system in said state of power drain; and

a power converter, coupled to said processor system, comprising a power converter controller configured to receive said signal from said power system controller, to sense a power level of said state of power drain in response to said signal, and to control an internal operating characteristic of said power converter as a function of said power level.

37.    Claim 12 of the '514 Patent reads:

The power system as recited in claim 11 wherein said power converter further comprises a power switch configured to conduct for a duty cycle to provide an output characteristic 10 at an output thereof, said power converter controller further

configured to control said duty cycle of said power switch dependent on said output characteristic and in accordance with said power level.

38.     Claim 14 of the '514 Patent reads:

The power system as recited in claim 11 wherein said power converter controller is configured to adjust said internal operating characteristic over a period of time.

39.     Claim 15 of the '514 Patent reads:

The power system as recited in claim 11 wherein said internal operating characteristic is selected from the group consisting of:

        a gate drive voltage level of a power switch of said power converter,

        a switching frequency of said power converter, and

        an internal direct current bus voltage of said power converter.

40.     Claim 16 of the '514 Patent reads:

A method of operating a power system, comprising:

        enabling operation of components of a processor system to establish a state of power drain thereof;

        providing a signal to identify operation of said processor system in said state of power drain;

        sensing a power level of said state of power drain in response to said signal; and

        controlling an internal operating characteristic of a power converter as a function of said power level.

41.     Claim 17 of the '514 Patent reads:

The method as recited in claim 16, further comprising:

        inducing a power switch of said power converter to conduct for a duty cycle to provide an output characteristic at an output thereof; and

        controlling said duty cycle of said power switch dependent on said output characteristic and in accordance with said power level.

42.     Claim 19 of the '514 Patent reads:

The method as recited in claim 16 wherein said controlling said internal operating characteristic comprises occurs over a period of time.

43.     Claim 20 of the '514 Patent reads:

The method as recited in claim 16 wherein said internal operating characteristic is selected from the group consisting of:

a gate drive voltage level of a power switch of said power converter,

a switching frequency of said power converter, and

an internal direct current bus voltage of said power converter.

44.     The '514 Patent's named inventors are Daniel A. Artusi, Ross Fosler, and Allen F. Rozman.

45.     MyPAQ owns all rights, title, and interests in and to the invention of the '514 Patent and its underlying patent applications by written assignments recorded with the United States Patent and Trademark Office. On April 7, 2008, as recorded with the United States Patent and Trademark Office on May 4, 2020, Flextronics International USA, Inc. merged with ColdWatt, Inc. In May and June 2008, Daniel A. Artusi, Ross Fosler, and Allen F. Rozman assigned their interests in the '514 Patent to ColdWatt, Inc., which had merged with Flextronics International USA, Inc. In turn, Flextronics International USA, Inc. assigned its interests in the '514 Patent to MyPAQ on March 26, 2021, as recorded with the United States Patent and Trademark Office on April 8, 2021.

46.     MyPAQ is the exclusive owner by assignment of all rights, title, and interests in the '514 Patent, including the right to bring this suit for damages, and including the right to sue and recover all past, present, and future damages for infringement of the '514 Patent.

47.     Defendants are not licensed to the '514 Patent, either expressly or implicitly, nor do they enjoy or benefit from any rights in or to the '514 Patent whatsoever.

## VI. THE ACCUSED INSTRUMENTALITY

48.     Defendants manufacture, use, and sell infringing devices and products, including, but not limited to, power adapters and converters compatible with USB Type-C plugs, such as Dell part no. LA90PM170 (collectively "Accused Instrumentality"), which is pictured below:



## VII. COUNT 1: DIRECT INFRINGEMENT OF THE '759 PATENT

49.     All previous paragraphs are incorporated herein as if fully set forth herein.

50.     Defendants have directly infringed and continue to directly infringe the '759 Patent under 35 U.S.C. §§ 271(a) and 271(g) by making, using, selling, offering to sell, and/or importing in or into the United States the Accused Instrumentality that practices the '759 Patent.

51.     Upon information and belief, Defendants manufacture the Accused Instrumentality at facilities in China and possibly other countries. Defendants market, sell, offer to sell, and import the Accused Instrumentality in and into the United States.

52.     As further described in the claim charts attached as Exhibits C–E, the Accused Instrumentality directly infringes each element of at least Claims 1, 2, 6, 11, and 16 of the '759 Patent.

53.   For example, with respect to Claim 1 of the '759 Patent, the Accused Instrumentality LA90PM170 is a power adapter/converter rated at 90 Watts that converts alternating current ("AC") electrical power into direct current ("DC") electrical power and includes a USB Type-C plug.

54.   The Accused Instrumentality LA90PM170 includes and is coupled to a power system controller that receives signals (e.g., Configuration Channel CC1 and Configuration Channel CC2) indicating a system operational state of a load, which are listed in Table 3-4 of the Universal Serial Bus Type-C Cable and Connector Specification, Release 2.0 (August 2019):

| Table 3-4  USB Type-C Receptacle Interface Pin Assignments | | | | | | | |
|---|---|---|---|---|---|---|---|
| Pin | Signal Name | Description | Mating Sequence | Pin | Signal Name | Description | Mating Sequence |
| A1 | GND | Ground return | First | B12 | GND | Ground return | First |
| A2 | TXp1 | Positive half of first TX differential pair | Second | B11 | RXp1 | Positive half of first RX differential pair | Second |
| A3 | TXn1 | Negative half of first TX differential pair | Second | B10 | RXn1 | Negative half of first RX differential pair | Second |
| A4 | VBUS | Bus Power | First | B9 | VBUS | Bus Power | First |
| A5 | CC1 | Configuration Channel | Second | B8 | SBU2 | Sideband Use (SBU) | Second |
| A6 | Dp1 | Positive half of the USB 2.0 differential pair – Position 1 | Second | B7 | Dn2 | Negative half of the USB 2.0 differential pair – Position 2 | Second |
| A7 | Dn1 | Negative half of the USB 2.0 differential pair – Position 1 | Second | B6 | Dp2 | Positive half of the USB 2.0 differential pair – Position 2 | Second |
| A8 | SBU1 | Sideband Use (SBU) | Second | B5 | CC2 | Configuration Channel | Second |
| A9 | VBUS | Bus Power | First | B4 | VBUS | Bus Power | First |
| A10 | RXn2 | Negative half of second RX differential pair | Second | B3 | TXn2 | Negative half of second TX differential pair | Second |
| A11 | RXp2 | Positive half of second RX differential pair | Second | B2 | TXp2 | Positive half of second TX differential pair | Second |
| A12 | GND | Ground return | First | B1 | GND | Ground return | First |

55.   The Accused Instrumentality LA90PM170 includes a power switch identified as "Q050." For at least one duty cycle thereof, the Q050 power switch conducts to provide a regulated output characteristic for a particular voltage/current requirement at the output, e.g., 5 volts at 0 amps, 5 volts at 1 amp, 5 volts at 2 amp, 9 volts at 0 amps, 9 volts at 1 amp, 9 volts at 2 amps, 15 volts at 0 amps, 15 volts at 1 amp, 15 volts at 2 amps, 20 volts at 0 amps, 20 volts at 1 amp, or 20 volts at 2

amps. This regulated output characteristic is provided at the USB-C connector, *e.g.*, at terminals identified as "B9 (VBUS)," "A4 (VBUS)," "B4 (VBUS)," and "A9 (VBUS)."

56.    The Accused Instrumentality LA90PM170 also includes a controller, *e.g.*, ON Semiconductor part number NCP1937, which receives a command from the power system controller, identified as "QFB" in Table 1 of the NCP1937 datasheet:

**NCP1937**

**Table 1. PIN FUNCTION DESCRIPTION**

| Pin Out | Name | Function |
|---|---|---|
| 1 | HV/X2 | High voltage startup circuit input. It is also used to discharge the input filter capacitors. |
| 2 | | Removed for creepage distance. |
| 3 | BO/X2 | Performs brown–out detection for the whole IC and it is also used to discharge the input filter capacitors and detect the line voltage range. |
| 4 | | Removed for creepage distance. |
| 5 | PControl | Output of the PFC transconductance error amplifier. A compensation network is connected between this pin and ground to set the loop bandwidth. |
| 6 | PONOFF | A resistor between this pin and ground sets the PFC turn off threshold. The voltage on this pin is compared to an internal voltage signal proportional to the output power. The PFC disable threshold is determined by the resistor on this pin and the internal pull–up current source, $I_{PONOFF}$. |
| 7 | QCT | An external capacitor sets the frequency in VCO mode for the QR flyback controller. |
| 8 | Fault | The controller enters fault mode if the voltage of this pin is pulled above or below the fault thresholds. A precise pull up current source allows direct interface with an NTC thermistor. Fault detection triggers a latch or auto–recovery depending on device option. |
| 9 | PSTimer | Power savings mode (PSM) control and timer adjust. Compatible with an optocoupler for secondary control of PSM. The device enters PSM if the voltage on this pin exceeds the PSM threshold, $V_{PS\_in}$. A capacitor between this pin and GND sets the delay time before the controller enters power savings mode. Once the controller enters power savings mode the IC is disabled and the current consumption is reduced to a maximum of 70 μA. The input filter capacitor discharge function is available while in power savings mode. The controller is enabled once $V_{PSTimer}$ drops below $V_{PS\_out}$. |
| 10 | QFB | Feedback input for the QR Flyback controller. Allows direct connection to an optocoupler. |
| 11 | QZCD | Input to the demagnetization detection comparator for the QR Flyback controller. Also used to set the overpower compensation. |
| 12 | VCC | Supply input. |
| 13 | QCS | Input to the cycle–by–cycle current limit comparator for the QR Flyback section. |
| 14 | QDRV | QR flyback controller switch driver. |
| 15 | PDRV | PFC controller switch driver. |
| 16 | PCS/PZCD | Input to the cycle–by–cycle current limit comparator for the PFC section. Also used to perform the demagnetization detection for the PFC controller. |
| 17 | GND | Ground reference. |
| 18 | PFBLV | Low voltage PFC feedback input. An external resistor divider is used to sense the PFC bulk voltage. The divider low side resistor connects to this pin. This voltage is compared to an internal reference. The reference voltage is 2.5 V at low line and 4 V at high line. An internal high–voltage switch disconnects the low side resistor from the high side resistor chain when the PFC is disabled in order to reduce input power. |
| 19 | | Removed for creepage distance. |
| 20 | PFBHV | High voltage PFC feedback input. An external resistor divider is used to sense the PFC bulk voltage. The divider high side resistor chain from the PFC bulk voltage connects to this pin. An internal high–voltage switch disconnects the high side resistor chain from the low side resistor when the PFC is disabled in order to reduce input power. |

57.    The Accused Instrumentality's QFB commands NCP1937 to enter a power converter operational state, *e.g.*, increasing VBUS (DC bus voltage, an internal operating characteristic), as a function of the signal indicating the system operational state, *e.g.*, Configuration Channel CC1 or Configuration Channel CC2.

58.    The Accused Instrumentality's NCP1937 controller further provides signals, also identified as an internal operating characteristic, *e.g.*, gate drive voltage "QDRV" in Table 1 (reproduced above) of the datasheet mentioned above. This signal controls the duty cycle of the Q050 power switch as a function of the regulated output characteristic, and in accordance with the QFB command.

59.    As a result of regulating QDRV, the operating efficiency of the Accused Instrumentality is improved as a function of operational state, as illustrated below:



60.    Thus, in this example, each and every element of Claim 1 of the '759 Patent is directly infringed by the Accused Instrumentality LA90PM170.

**VIII. COUNT 2: INDIRECT INFRINGEMENT OF THE '759 PATENT**

61.    All previous paragraphs are incorporated herein as if fully set forth herein.

62. Defendants have indirectly infringed and continue to indirectly infringe the '759 Patent under 35 U.S.C. § 271(b) by taking active steps to encourage, facilitate, aid, and/or otherwise cause direct infringement by others, including, but not limited to, the customers of their products.

63. Such active steps include, for example, Defendants' advertising, marketing, offering for sale, and sale of the Accused Instrumentality through Defendants' website:



Dell, https://www.dell.com/en-us/shop/dell-adapter-90-watt-type-c-with-1m-power-cord-cus-kit/apd/492-bcbk/pc-accessories (last visited December 6, 2021).

64. Such active steps also include, for example, Defendants' advertising, marketing, offering for sale, and sale of products that require the Accused Instrumentality to function, including, but not limited to, the Latitude 5320 2-in-1 and the Latitude 5520:



Dell, https://www.dell.com/en-us/work/shop/dell-laptops-and-notebooks/latitude-5320-laptop-or-2-in-1/spd/latitude-13-5320-2-in-1-laptop (last visited December 6, 2021).



Dell, https://www.dell.com/en-us/work/shop/dell-laptops-and-notebooks/latitude-5520-laptop/spd/latitude-15-5520-laptop (last visited December 6, 2021).

65.     Such active steps also include, for example, Defendants' online publication of user guides, which provide customers and users with instructions for, among other things, how to use the Accused Instrumentality:



Dell, https://www.dell.com/support/home/en-us/product-support/product/dell-adapter-usb-c-pa901c/docs (last visited December 6, 2021).

66.     Defendants undertook and continue to undertake such active efforts for the purpose of inducing, and intended to induce, their customers to use the Accused Instrumentality. Such efforts resulted in, and continue to result in, the Accused Instrumentality being used by Defendants' customers.

67.     On information and belief, Defendants' customers used and continue to use the Accused Instrumentality to power a variety of Defendants' products, including, but not limited to, the Latitude 5320 2-in-1 and the Latitude 5520. On information and belief, Defendants' customers do not manufacture the Accused Instrumentality but instead purchase it from Defendants.

68.     Because the Accused Instrumentality infringes each element of at least Claims 1, 2, 6, 11, and 16 of the '759 Patent, as further described in the claim charts attached as Exhibits C–E, Defendants' customers' use of the Accused Instrumentality constitutes direct infringement of the '759 Patent under 35 U.S.C. §§ 271(a) and 271(g). Such use was the result of Defendants' active encouragement and intentional inducement.

69.     Defendants have known of the existence of the '759 Patent and that the Accused Instrumentality infringes at least one claim of the '759 Patent since at least the date of service of MyPAQ's Original Complaint on September 13, 2021.

70.     Defendants have known that their customers' acts, including, but not limited to, their customers' use of the Accused Instrumentality, constituted direct infringement of at least one claim of the '759 Patent since at least the date of service of MyPAQ's Original Complaint on September 13, 2021.

71.     In addition to the foregoing and/or in the alternative, Defendants are liable as contributory infringers of the '759 Patent under 35 U.S.C. § 271(c). Defendants have offered to sell and/or sold the Accused Instrumentality within the United States, including, as pictured in paragraph 63, through their website.

72.     The invention claimed by the '759 Patent is a material component of the Accused Instrumentality because the Accused Instrumentality cannot deliver power or otherwise function without such invention.

73.     Because the invention claimed by the '759 Patent is an indispensable component of the Accused Instrumentality, the Accused Instrumentality cannot be used without infringing the '759 Patent. Therefore, any use of the Accused Instrumentality necessarily infringes the '759 Patent.

74.     On information and belief, Defendants have advertised and/or marketed the Accused Instrumentality, including as pictured in paragraph 63, for use only as a power adapter and/or converter compatible with USB Type-C plugs. Defendants have also published user guides, including as pictured in paragraph 65, which instruct their customers to use the Accused Instrumentality only as a power adapter and/or converter compatible with USB Type-C plugs.

75.     Defendants have acted in such a manner because there is no logical or practical use for the Accused Instrumentality other than its use as a power adapter and/or converter compatible with USB Type-C plugs.

76.     On information and belief, Defendants' customers do not use the Accused Instrumentality for any purpose other than as a power adapter and/or converter compatible with USB

Type-C plugs. That is so because there is no logical or practical use for the Accused Instrumentality other than its use as a power adapter and/or converter compatible with USB Type-C plugs.

77.     As a result, the Accused Instrumentality is not a staple article or a commodity of commerce suitable for any substantial non-infringing use. Thus, Defendants are liable as contributory infringers.

### IX. COUNT 3: DIRECT INFRINGEMENT OF THE '514 PATENT

78.     All previous paragraphs are incorporated herein as if fully set forth herein.

79.     Defendants have directly infringed and continue to directly infringe the '514 Patent under 35 U.S.C. §§ 271(a) and 271(g) by making, using, selling, offering to sell, and/or importing in or into the United States the Accused Instrumentality that practices the '514 Patent.

80.     Upon information and belief, Defendants manufacture the Accused Instrumentality at facilities in China and possibly other countries. Defendants market, sell, offer to sell, and import the Accused Instrumentality in and into the United States.

81.     As further described in the claim charts attached as Exhibits F–I, the Accused Instrumentality directly infringes each element of at least Claims 1, 2, 3, 5, 6, 7, 8, 10, 11, 12, 14, 15, 16, 17, 19, and 20 of the '514 Patent.

82.     For example, with respect to Claim 1 of the '514 Patent, the Accused Instrumentality LA90PM170 is a power adapter/converter rated at 90 Watts that converts AC electrical power into DC electrical power for a load coupled by a USB Type-C plug.

83.     The Accused Instrumentality LA90PM170 includes a power switch identified as "Q050." For at least one duty cycle thereof, the Q050 power switch conducts to provide an output characteristic for a particular voltage/current requirement at the output, *e.g.*, 5 volts at 0 amps, 5 volts at 1 amp, 5 volts at 2 amp, 9 volts at 0 amps, 9 volts at 1 amp, 9 volts at 2 amps, 15 volts at 0 amps, 15 volts at 1 amp, 15 volts at 2 amps, 20 volts at 0 amps, 20 volts at 1 amp, or 20 volts at 2 amps. This

output characteristic is provided at the USB-C connector, *e.g.*, at terminals identified as "B9 (VBUS),"
"A4 (VBUS)," "B4 (VBUS)," and "A9 (VBUS)."

84.     The Accused Instrumentality LA90PM170 includes a power converter controller, *e.g.*,
ON Semiconductor part number NCP1937, which receives signals (*e.g.*, Configuration Channel CC1
and Configuration Channel CC2) from the load indicating a system operational state of the load, which
are listed in Table 3-4 of the Universal Serial Bus Type-C Cable and Connector Specification, Release
2.0 (August 2019) (reproduced above).

85.     The NCP1937 controller further controls internal operating characteristics of the
Accused Instrumentality LA90PM170, *e.g.*, gate drive voltage "QDRV" in Table 1 of the datasheet
referenced above and DC bus voltage "VBUS," as a function of the signals (*e.g.*, Configuration
Channel CC1 and Configuration Channel CC2).

86.     Thus, in this example, each and every element of Claim 1 of the '514 Patent is directly
infringed by the Accused Instrumentality LA90PM170.

## X. COUNT 4: INDIRECT INFRINGEMENT OF THE '514 PATENT

87.     All previous paragraphs are incorporated herein as if fully set forth herein.

88.     Defendants have indirectly infringed and continue to indirectly infringe the '514 Patent
under 35 U.S.C. § 271(b) by taking active steps to encourage, facilitate, aid, and/or otherwise cause
direct infringement by others, including, but not limited to, the customers of their products.

89.     Such active steps include, for example, Defendants' advertising, marketing, offering
for sale, and sale of the Accused Instrumentality, including, but not limited to, as pictured in paragraph
63.

90.     Such active steps also include, for example, Defendants' advertising, marketing,
offering for sale, and sale of products that require the Accused Instrumentality to function, including,
but not limited to, the Latitude 5320 2-in-1 and the Latitude 5520, as pictured in paragraph 64.

91.     Such active steps also include, for example, Defendants' online publication of user guides, as pictured in paragraph 65. Such guides provide customers and users with instructions for, among other things, how to use the Accused Instrumentality.

92.     Defendants undertook and continue to undertake such active efforts for the purpose of inducing, and intended to induce, their customers to use the Accused Instrumentality. Such efforts resulted in, and continue to result in, the Accused Instrumentality being used by Defendants' customers.

93.     On information and belief, Defendants' customers used and continue to use the Accused Instrumentality to power a variety of Defendants' products, including, but not limited to, the Latitude 5320 2-in-1 and the Latitude 5520. On information and belief, Defendants' customers do not manufacture the Accused Instrumentality but instead purchase it from Defendants.

94.     Because the Accused Instrumentality infringes each element of at least Claims 1, 2, 3, 5, 6, 7, 8, 10, 11, 12, 14, 15, 16, 17, 19, and 20 of the '514 Patent, as further described in the claim charts attached as Exhibits F–I, Defendants' customers' use of the Accused Instrumentality constitutes direct infringement of the '514 Patent under 35 U.S.C. §§ 271(a) and 271(g). Such use was the result of Defendants' active encouragement and intentional inducement.

95.     Defendants have known of the existence of the '514 Patent and that the Accused Instrumentality infringes at least one claim of the '514 Patent since at least the date of service of MyPAQ's Original Complaint on September 13, 2021.

96.     Defendants have known that their customers' acts, including, but not limited to, their customers' use of the Accused Instrumentality, constituted direct infringement of at least one claim of the '514 Patent since at least the date of service of MyPAQ's Original Complaint on September 13, 2021.

97.     In addition to the foregoing and/or in the alternative, Defendants are liable as contributory infringers of the '514 Patent under 35 U.S.C. § 271(c). Defendants have offered to sell and/or sold the Accused Instrumentality within the United States.

98.     For example, the Accused Instrumentality LA90PM170 was offered for sale, sold, and/or marketed by and through Defendants on their website, as pictured in paragraph 63.

99.     The invention claimed by the '514 Patent is a material component of the Accused Instrumentality because the Accused Instrumentality cannot deliver power or otherwise function without such invention.

100.    Because the invention claimed by the '514 Patent is an indispensable component of the Accused Instrumentality, the Accused Instrumentality cannot be used without infringing the '514 Patent. Therefore, any use of the Accused Instrumentality necessarily infringes the '514 Patent.

101.    On information and belief, Defendants have advertised and/or marketed the Accused Instrumentality, including as pictured in paragraph 63, for use only as a power adapter and/or converter compatible with USB Type-C plugs. Defendants have also published user guides, including as pictured in paragraph 65, which instruct their customers to use the Accused Instrumentality only as a power adapter and/or converter compatible with USB Type-C plugs.

102.    Defendants have acted in such a manner because there is no logical or practical use for the Accused Instrumentality other than its use as a power adapter and/or converter compatible with USB Type-C plugs.

103.    On information and belief, Defendants' customers do not use the Accused Instrumentality for any purpose other than as a power adapter and/or converter compatible with USB Type-C plugs. That is so because there is no logical or practical use for the Accused Instrumentality other than its use as a power adapter and/or converter compatible with USB Type-C plugs.

104.     As a result, the Accused Instrumentality is not a staple article or a commodity of commerce suitable for any substantial non-infringing use. Thus, Defendants are liable as contributory infringers.

## XI. JURY DEMAND

105.     Plaintiff hereby demands a trial by jury on all issues so triable.

## XII. PRAYER FOR RELIEF

106.     Plaintiff requests the following relief:

A.     A judgment that Defendants have directly and indirectly infringed, either literally and/or under the doctrine of equivalents and/or contributorily and/or by inducing others to infringe, and continue to directly and indirectly infringe the Patents;

B.     A judgment and order requiring Defendants to pay Plaintiff damages under 35 U.S.C. § 284, and supplemental damages for any continuing post-verdict infringement through entry of the final judgment with an accounting as needed;

C.     A judgment that this is an exceptional case within the meaning of 35 U.S.C. § 285 and Plaintiff is therefore entitled to reasonable attorneys' fees;

D.     A judgment and order requiring Defendants to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

E.     A judgment and order awarding a compulsory ongoing royalty;

F.     A judgment and order awarding Plaintiff costs associated with this action; and

G.     Such other and further relief as the Court deems just and equitable.

Dated: December 6, 2021

Respectfully submitted,

By: */s/ Krisina J. Zuñiga*
    Charles Ainsworth (Texas 00783521)
    Robert Christopher Bunt (Texas 00787165)
    PARKER, BUNT & AINSWORTH, P.C.
    100 E. Ferguson, Suite 418
    Tyler, Texas 75702
    Tel: (903) 531-3535
    charley@pbatyler.com
    rcbunt@pbatyler.com

    Alfonso G. Chan (Texas 24012408)
    Michael W. Shore (Texas 18294915)
    Samuel E. Joyner (Texas 24036865)
    Halima Shukri Ndai (Texas 24105486)
    SHORE CHAN LLP
    901 Main Street, Suite 3300
    Dallas, Texas 75202
    Tel: (214) 593-9110
    Fax: (214) 593-9111
    achan@shorechan.com
    mshore@shorechan.com
    sjoyner@shorechan.com
    hndai@shorechan.com

    Brian D. Melton (Texas 24010620)
    Krisina J. Zuñiga (Texas 24098664)
    SUSMAN GODFREY LLP
    1000 Louisiana Street, Suite 5100
    Houston, Texas 77002
    Tel: (713) 651-9366
    Fax: (713) 654-6666
    bmelton@susmangodfrey.com
    kzuniga@susmangodfrey.com

    Steven M. Shepard (New York 5291232)
    SUSMAN GODFREY LLP
    1301 Avenue of the Americas, 32nd Floor
    New York, New York 10019
    Tel: (212) 336-8330
    Fax: (212) 336-8340
    sshepard@susmangodfrey.com

    **COUNSEL FOR PLAINTIFF**
    **MYPAQ HOLDINGS LTD.**

## CERTIFICATE OF SERVICE

I hereby certify that on Monday, December 6, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ Krisina J. Zuñiga*
Krisina J. Zuñiga